```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

PATRICIA J. MURPHY, et al.      :      CIVIL ACTION
                                :
          v.                    :
                                :
THE INTERNATIONAL DRUIDIC       :
SOCIETY, et al.                 :      NO. 13-511


                          MEMORANDUM

Bartle, J.                                       June 20, 2013

      Plaintiff Patricia J. Murphy ("Murphy"), individually and as administrator for the estate of Edward Turner, has sued defendants The International Druidic Society ("IDS"), Judy Ellen Taylor, Steven Turner, Allen Turner, Russell Turner, Jamie Taylor, and Marlow Taylor. Murphy has alleged racketeering under 18 U.S.C. § 1961 et seq. as well as various state law claims.[1] Before the court are the motions of Jamie Taylor, Steven Turner, and Judy Ellen Taylor to dismiss plaintiffs' amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a clam upon which relief can be granted.

                              I.

      When deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the

---

1. Our jurisdiction exists under 28 U.S.C. § 1331. There is no diversity jurisdiction under 18 U.S.C. § 1332(a) because Murphy, as administrator for the estate of Edward Turner, "shall be deemed to be a citizen only of the same State as the decedent." See 28 U.S.C. § 1332(c). Edward Turner was a citizen of New Jersey, as are various defendants.

complaint and draw all inferences in the light most favorable to the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. Planco Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim must do more than raise a "'mere possibility of misconduct.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1950). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. This court may consider the allegations in the complaint along with matters of public record and any exhibits attached to the complaint. E.g., Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

In addition, when fraud is alleged, Rule 9(b) of the Federal Rules of Civil Procedure requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This is a higher pleading standard than what is generally required under Rule 8 of the Federal Rules of Civil Procedure. The heightened pleading standard gives defendants "notice of the claims against them, provides an increased measure of protection for their

reputations, and reduces the number of frivolous suits brought solely to extract settlements." <u>In re Burlington Coat Factory Securities Litigation</u>, 114 F.3d 1410, 1418 (3d Cir. 1996).

II.

The following facts are viewed in the light most favorable to the plaintiff. Murphy was a long-time friend of Edward Turner. Defendant IDS is a Pennsylvania non-profit corporation. Defendants Judy Ellen Taylor, Steven Turner, Allen Turner, and Russell Turner are the children of Edward Turner, and defendants Jamie Taylor and Marlow Taylor are his grandchildren. In 1986, after having been the victim of a burglary, Murphy consulted with Edward Turner about the safety and security of her finances. He convinced Murphy to allow him to control her financial affairs and to deposit her funds into bank accounts he controlled. He told her that he would place her money into the accounts of IDS, which he controlled, and that he would use her funds to purchase certificates of deposit in a federally insured bank.

Thereafter, from 1987 through September 2006, Edward Turned handled Murphy's financial affairs. He deposited funds from the salary she received, from the sale of real estate she owned, and from the sale of several stocks she had acquired into one or more bank accounts titled in the name of IDS or IDS and Edward Turner. In these accounts, Edward Turned co-mingled his funds with Murphy's funds. By September 22, 2006, Murphy's funds which Edward Turner held for her in these accounts totaled

$259,759. In September 2006, he used Murphy's funds to purchase two certificates of deposit at TD Bank North N.A., a federally insured bank, in the joint name of IDS and Edward Turner, in the amount of $114,633.53. The maturity date for each of these certificates of deposit was April 5, 2008, and each had an interest rate of 1.511%.

In September 2006, Murphy noticed that Edward Turner's health was beginning to deteriorate. She told him that she was concerned about the security of her money. He reassured her and on September 22, 2006 issued a promissory note verifying the total that Murphy would be repaid by him when the certificates of deposit reached their maturity in April 2008. Murphy informed defendants Judy Ellen Taylor, Steven Turner, Jamie Taylor, and Marlow Taylor of the promissory note.

On August 3, 2006, Edward Turner signed a power of attorney naming Judy Ellen Taylor as his attorney-in-fact. On or about July 12, 2007, a corporate resolution of IDS, signed by Edward Turner, Judy Ellen Taylor, and Marlow Taylor, was filed with TD Bank North, N.A. This resolution authorized Judy Ellen Taylor to sign checks for IDS and to withdraw funds from its account. Following the signing of this resolution, Judy Ellen Taylor "began systematically looting and depleting the funds in the IDS account in a common scheme with the other named defendants," by drawing checks made payable to herself and the other defendants. In addition, on July 20, 2007 and September 17, 2007, Judy Ellen Taylor cashed out the two

certificates of deposit and transferred those funds into the IDS account.

In April 2008, Murphy made repeated demands for payment under the promissory note to Edward Turner, Judy Ellen Taylor, and Steven Turner, but no payments were made. She also made repeated requests to Judy Ellen Taylor, Steven Turner, Jamie Taylor, and Marlow Taylor for them to provide the current address and health status of Edward Turner so that she could collect the funds due to her, but they "collectively conspired to conceal" his residence and health status.

On August 27, 2009, Murphy sued Edward Turner and IDS in the Court of Common Pleas of Philadelphia, Pennsylvania to enforce her rights under the promissory note and to compel payment. On April 28, 2010, Murphy learned that Edward Turner had died on March 3, 2010 in Burlington County, New Jersey. She then contacted the named defendants to ask them to open an estate on behalf of Edward Turner and have the estate make payment to her based on the promissory note. The defendants did not do so. Murphy filed a petition in Burlington County, New Jersey to have an administrator for the estate of Edward Turner appointed by the court. On July 29, 2011, an order was entered in the Superior Court of New Jersey, Burlington County, appointing Murphy as the administrator of the estate of Edward Turner.

Following this appointment, Murphy amended her complaint in the Court of Common Pleas to substitute herself as the administrator of the estate of Edward Turner as the proper

party defendant in that action.  Accordingly, Murphy was both plaintiff and defendant in that action.  Trial was held on August 13, 2012 in the Court of Common Pleas.  Notice was sent to Judy Ellen Taylor, Steven Turner, Allen Turner, Jamie Taylor, and Marlow Taylor, but they did not attend.  The court ruled in favor of plaintiff Murphy and against the estate of Edward Turner in the amount of $315,798, which included interest on the promissory note at the statutory rate of 6% per year from April 2008 to August 2012.

On November 29, 2012, Murphy filed this action, both individually and as the administrator for the estate of Edward Turner, in the Court of Common Pleas of Philadelphia County, seeking to recover that $315,798, plus interest and costs, from IDS, Judy Ellen Taylor, Steven Turner, Allen Turner, Russell Turner, Jamie Taylor, and Marlow Taylor, jointly and severally.  She brought four counts:  civil conspiracy; fraud; theft and conversion; racketeering under the federal and state Racketeer Influenced Corrupt Organizations statutes, namely 18 U.S.C. §§ 1962, 1964 ("RICO") and 18 Pa. Cons. Stat. Ann. § 911; and "complaint in equity."  The action was later removed to this court, and Jamie Taylor, Steven Turner, and Judy Ellen Taylor filed the present motions to dismiss.

### III.

We start with the motion to dismiss the federal RICO claim.  RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of

which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  "To establish a § 1962(c) RICO violation, the plaintiff must prove the following four elements:  (1) the existence of an enterprise affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated..., either directly or indirectly, in the conduct or the affairs of the enterprise; and (4) that he or she participated through a pattern of racketeering activity."[2] United States v. Bergrin, 650 F.3d 257, 265 (3d Cir. 2011).

     The statute does not specifically outline the boundaries of an enterprise but states that the term "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  The Supreme Court has recently explained, "[f]rom the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features:  a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  Boyle v. United States, 556 U.S. 938, 946 (2009).

---

2.  Section 1964 provides the civil remedies of RICO and explains that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court...."

Murphy alleges that the defendants formed an enterprise as described in the following two paragraphs of the amended complaint:

> 44. The defendants in a common enterprise collectively conspired to convert plaintiffs' money to their own use and to deplete the estate of Edward F. Turner, by a pattern of writing checks made payable primarily to Marlow Taylor and by having Marlow Taylor cash the checks at various check cashing facilities and then distributing the cash between the defendant co-conspirators....
>
> 63. The defendants were associated in an enterprise which affected interstate commerce. Specifically, the defendants plotted together and transferred funds from bank accounts existing in the Commonwealth of Pennsylvania to bank accounts in the state of New Jersey with the intent of stealing money, which was the property of the plaintiff, Patricia J. Murphy and/or the estate of Edward F. Turner.

These allegations are sufficient to plead that the defendants constitute an enterprise. Judy Ellen Taylor, Steven Turner, Allen Turner, Russell Turner, Jamie Taylor, and Marlow Taylor are a family, that is, they are the children and grandchildren of Edward Turner. Accordingly, there are clear relationships among them, and those relationships have longevity. As for the purpose of the enterprise, Murphy alleges it was to "convert plaintiffs' money to their own use and to deplete the estate of Edward F. Turner."

A "pattern of racketeering activity" is defined as "requir[ing] at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the

last of which occurred within ten years ... after the commission of a prior act of racketeering activity."  18 U.S.C. § 1961(5).  The "person" charged with the racketeering offense, not the entire enterprise, must engage in the "pattern of racketeering activity."  See H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 244 (1989).

The pattern of racketeering activity set forth in paragraph 44 is "writing of checks" by members of the enterprise so as to deplete and convert the money belonging to the estate of Edward Turner and/or Murphy.  In paragraph 64, plaintiff further states, "[t]he depletion of the funds in the IDS accounts, through a series of checks and cash withdrawals, constitutes a patter [sic] of racketeering activity by the defendants."

"Racketeering activity" is defined by 18 U.S.C. § 1961(1) to include "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical ... which is chargeable under State law and punishable by imprisonment for more than one year" as well as numerous federal crimes including "any act which is indictable under ... section 1341 (relating to mail fraud) [or] 18 U.S.C. § 1343 (relating to wire fraud)...."

The amended complaint alleges theft and fraud throughout.  However, the RICO statute does not list these as racketeering activities.  18 U.S.C. § 1961(1).  Theft and its analogues have not been read into the list of crimes in

§ 1961(1). See Annulli v. Panikkar, 200 F.3d 189, 199-200 (3d Cir. 1999). Crimes or common law torts such as fraud and conversion also cannot be racketeering activities. Atuahene v. Shermet Indus., No. 99-866, 2000 U.S. Dist. LEXIS 12944, 11-12 (E.D. Pa. Sept. 7, 2000) (citing 18 U.S.C. § 1961(1); Annulli, 200 F.3d at 200).

The only possible predicate racketeering activity mentioned in the amended complaint appears to be federal mail fraud, and that occurs in only paragraph 69 which reads:

> 69. In a common course of conduct with defendants, Steven Turner, Allen Turner, Russell Turner, Jamie Taylor and Marlow Taylor, defendant, Judy Ellen Taylor, used the United States Mail to perpetrate an ongoing fraud. To wit, she mailed false, fraudulent or misleading documents to plaintiffs and/or plaintiffs' counsel.

To state a claim for mail fraud under 18 U.S.C. § 1341,[3] plaintiffs must allege (1) a scheme or artifice to defraud, (2) participation by the defendants with specific intent to defraud, and (3) use of the mails in furtherance of the scheme. United States v. Carey, 337 F. App'x 256, 263 n.9 (3d Cir. 2009) (citing United States v. Copple, 24 F.3d 535, 544 (3d Cir. 1994)). "[A] scheme or artifice to defraud need not be

---

3. The mail fraud statute provides in relevant part: Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service ... shall be fined under this title or imprisoned not more than 20 years, or both. 18 U.S.C. § 1341.

fraudulent on its face, but must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension."  Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 528 (3d Cir. 1998) (citations omitted).

In addition, "[w]here acts of mail ... fraud constitute the alleged predicate racketeering acts, those acts are subject to the heightened pleading requirement of Rule 9(b)."  Warden v. McLelland, 288 F.3d 105, 114 (3d Cir. 2002).  To satisfy the pleading requirements of Rule 9(b) of the Federal Rule of Civil Procedure, a complaint may either describe "the circumstances of the alleged fraud with precise allegations of date, time, or place" or may use "some [other] means of injecting precision and some measure of substantiation into their allegations of fraud."  Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 172 n.10 (3d Cir. 2002).  A claim satisfies the requirements of Rule 9(b) if it adequately delineates the acts and transactions constituting fraud to apprise defendants fairly of the claim, and if its allegations are sufficiently clear to enable defendants to answer.  Jairett v. Montauk First. Sec. Corp., 203 F.R.D. 181, 186 (E.D. Pa. 2001).

Paragraph 69 of the amended complaint, which contains the only reference to the use of the mail, does not provide the specificity required under Rule 9(b) to allege mail fraud under § 1341.  The plaintiff does not identify the documents or their

-11-

fraudulent contents and does not specify the dates, times, or places when any mail fraud took place.

In addition, Murphy alleges in her opposition to the defendants' motions that one of the predicate acts of racketeering committed by the defendants was "the fraudulent use of an ATM network." For this proposition, she cites United States v. Giordano, 442 F.3d 30, 40 (2d Cir. 2006). That case is inapposite. The crimes involved there were civil rights violations under color of law in violation of 18 U.S.C. § 242, conspiracy to use a facility of interstate commerce for the purpose of enticing a person under the age of sixteen years to engage in sexual activity in violation of 18 U.S.C. §§ 371 and 2425, and use of a facility of interstate commerce in violation of § 2425. Giordano, 442 F.3d at 33. The court mentioned ATM networks in a footnote citing cases defining facilities of interstate commerce. Moreover, fraudulent use of an ATM network is not listed as a predicate crime in § 1961. Accordingly, Murphy has failed to allege any predicate racketeering activities.

Even if Murphy had properly alleged predicate racketeering activities, she must do more. The RICO statute requires that "to prove a pattern... a plaintiff ... must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." See H.J., Inc., 492 U.S. at 239. "Continuity" includes "both a closed- and open-ended concept, referring either to a closed

period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Id. at 241. Here, any continuity would be "closed" since there is nothing in the amended complaint averring any threat of future repetition. "Closed-ended continuity" can be established "by proving a series of related predicates extending over a substantial period of time." Id. at 242. The Supreme Court, however, has explained that "predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with longterm criminal conduct." Id.

Murphy has not alleged the requisite closed-ended continuity. She does not plead the dates when any alleged mail fraud occurred and thus has not pleaded that racketeering activity extended over a substantial period of time. The dates of any theft or conversion cannot be factored into this potential time period since, as discussed previously, they do not qualify as racketeering activities.

Accordingly, we will dismiss the RICO claim against Jamie Taylor, Steven Turner, and Judy Ellen Taylor.

IV.

The only claims remaining are based on Pennsylvania law, over which we have no independent basis for subject matter jurisdiction since, as noted above, the required diversity of citizenship is lacking. Although federal courts with original jurisdiction over a federal claim have supplemental jurisdiction

over state claims that form "part of the same case or controversy," a court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(a), (c)(3). The Third Circuit directs that, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) (citations omitted). There is no judicial economy in trying the state claims here. The case is in its earliest stages, an answer has not been filed, discovery has not occurred and trial has not been scheduled. It is not inconvenient or unfair to the parties to transfer this case to state court. Because no federal issues remain, we will dismiss the state law claims against Jamie Taylor, Steven Turner, and Judy Ellen Taylor without prejudice pursuant to § 1367(c)(3).